**Commonwealth v. Baker**

*Martha Duvall, assistant district attorney,* for the commonwealth.

*Jack Reagle,* for defendant.

LEETE, *P.J.*, May 11, 1988—On February 6, 1988, defendant Cletus L. Baker was arrested for driving under the influence, a violation of 75 P.S. §3731 (a) (1), (2), and (3) by Coudersport Borough Officer Robert Vicini. Defendant has filed an omnibus pretrial motion asking for suppression of the results of various field tests performed by the arresting officer, the results of a blood alcohol test, as well as the officer's observations relative to defendant. The sole basis of defendant's motion is that the arresting officer was a part-time officer, and as such, had no authority to arrest under Pennsylvania law.

All parties agree that Officer Vicini does not work full-time as a Coudersport Borough police officer, but works part-time an average of one or two days per week as scheduled. This officer has other full-time employment and is not available to the Borough of Coudersport on a full-time basis. Nor was Officer Vicini hired from the top three eligibles who had taken the civil service examination as mandated by the Police Civil Service Act of 1941 (53 P.S. §53264). Coudersport Borough has only two full-time officers, and several part-time officers who fill in as needed. Officer Vicini also testified that he was properly trained and qualified to be a municipal police officer pursuant to the Municipal Police Officers Training Act, 53 P.S. §740 et seq.

It is defendant's contention that he was arrested by a police officer who was illegally hired and, therefore, had no authority to make an arrest.

In support of his contention, defendant relies on a case decided in the Court of Common Pleas of Monroe County, namely *Commonwealth v. Russ*, no. 983-1984. In *Russ*, the court ruled that:

"Authority for borough police officers to make arrests is found in 53 P.S. §46121. The statute distinguishes among 'policemen,' 'special policemen' and

'auxiliary policemen.' The statute gives no arrest authority to 'regular part-time' or 'casual part-time' police officers." *Commonwealth v. Russ, supra.* The *Russ* case cites two Superior Court decisions as authority for its decision: *Commonwealth v. Ward,* 235 Pa. Super. 550, 344 A.2d 650 (1975) and *Commonwealth v. Brenneman,* 236 Pa. Super. 120, 344 A.2d 564 (1975). These cases both address the authority auxiliary police officers have to perform regular police functions, including the power of arrest. Neither case deals specifically with regular part-time police officer.

The Act of January 14, 1952, P.L. (1951) 2016, 53 P.S. §731-737 is the sole authority for the creation and utilization of auxiliary policemen. The pertinent sections of the act provide for the calling of auxiliary police to active duty during any period of distress, disaster, or emergency (53 P.S. §734) and that auxiliary policemen on active duty shall have the same powers as regular police officers (53 P.S. §735). *Commonwealth v. Brenneman, supra.* However, Officer Vicini was not hired as an auxiliary policeman so this statutory section is not applicable. Because both *Ward* and *Brenneman* involve auxiliary police officers, we believe the rationale of these cases and of the *Russ* case is not applicable to the case at bar. To the extent that the *Russ* case makes no distinction between part-time officers and auxiliary officers, we must respectfully disagree with its applicability here.

The power to hire police officers generally is found in the Borough Code, Act of February 1, 1966, §1121; 53 P.S. §46121: "Borough council may, subject to civil service provisions of this act, . . . , appoint and remove . . . one or more suitable persons, . . . as borough policemen, . . ." As to Officer Vicini, it is this statutory section that authorizes

his power of arrest if indeed he has such power. Nothing in this section however, differentiates in any way between part-time and full-time officers. Defendant argues that because Officer Vicini is part-time and was not hired subject to the civil service provisions (53 P.S. §53264), his authority to arrest is illegal. We disagree.

Prior to 1941, police employed by all boroughs had no civil service or job tenure rights. The Police Civil Service Act (Act of June 5, 1941, P.L. 84, 53 P.S. §53251) changed this for boroughs employing three or more policemen. By that act, police employed by boroughs were granted job tenure rights which prohibited their dismissal, except for causes stated in the statute and in compliance with the procedures outlined therein. All provisions of the Act of 1941 have been re-enacted as part of the Borough Code (Act of July 10, 1947, P.L. 1621, 53 P.S. §§46165-46190). The enactment still applied only to boroughs having police forces of three or more members. As stated in *Gagliardi v. Ambridge Borough* 401 Pa. 141, 163 A.2d 418 (1960), the purpose of these laws (civil service statutes) is to insure the continuance in office of these individuals who are faithful and conscientious in the discharge of their duties and to free these public officers from the fear of political and personal prejudicial reprisal. It was not intented thereby to restrict the municipality from prescribing reasonable and indiscriminatory qualifications for those favored by appointment. The Police Civil Service Act of 1941 does not deprive council of the power to appoint and remove, nor the mayor of the power to suspend, but merely prescribes and limits the conditions under which those powers may be exercised. *Bragdon v. Ries*, 346 Pa. 10, 29 A.2d 40 (1942); *Ambrose v. Dupont Borough,*

33 D. & C. 3d 362 (1984); *Suspension of Laux,* 77 D. & C. 211 (1951).

Under the Police Civil Service Act, an exemption from civil service requirements was granted to any borough having a police force of less than three persons. Members of the "police force" include persons who "[d]evote their normal working hours to police duty." 53 P.S. §46195. This was a specific exclusion from the definition of a police force for *any extra police serving from time to time* or on an hourly or daily basis. *Id.* (emphasis supplied)

We find these limitations imposed by the Police Civil Service Act to apply to full-time employees only. In *Masemer v. Borough of McSherrytown,* 34 D. & C. 2d 669 (1964), the borough employed one full-time police officer and four other police officers on a part-time basis. These part-time officers all had other regular employment and were not on call at any and all times for police duty. The court found that because the borough police force consisted of less than three men, the Police Tenure Act of 1951 applied. More importantly, because the borough police force consisted of less than three men, the Police Civil Service Act of 1941 was not applicable. *Masemer* at 672-3. In other words, part-time officers were not included within the parameters of the civil service provisions (53 P.S. §53251), but rather the act applies only to regular full-time police officers.

In 1951, the Legislature passed a Police Tenure Act (Act of June 15, 1951, P.L. 586, 53 P.S. §811-815) which extended many of the dismissal and discipline procedures of the Act of 1941 to police forces of less than three members. *Masemer v. Borough of McSherrytown, supra.* "In order to qualify as a member of a borough police force for purposes of determining the size of the force under the above-cited job protection statutes, a borough police offi-

cer must be a regular full-time officer within the meaning of the Police Tenure Act who also meets the criteria of the Borough Code Subsection 1195 (53 P.S. §46195) *supra.*" *Huntley & Williams v. Boswell,* 25 D. & C. 3d 101, 107 (1981). Similarly, the court in *Ambrose v. Dupont Borough,* 33 D. & C. 3d 362 (1984) stated that:

"The civil service provisions of the borough code which apply to boroughs having a police force of three or more regular full-time officers, do not use the term 'regular full-time police officer,' stating instead that the size of the police force is to be determined by counting the total of those police officers who 'devote their normal working hours to police duty,' and who are paid a stated 'salary or compensation' for such work. Both parties agree that only regular full-time officers are to be included in the count, and we agree with this interpretation of the statute. . . . The court further noted that in order for the plaintiff police officer to be entitled to the discharge provisions provided by the civil service act, he would need to successfully prove that he was indeed a 'regular full-time police officer.' "

A "regular full-time officer" refers to the nature of the job held and the character of the work performed. *Deskins v. West Brownsville Borough,* 338 Pa. 547, 131 A.2d 101 (1957). A police officer employed on a part-time basis but who is on call at any and all times for normal police duties is "a regular full-time police officer" within the meaning of the Police Tenure Act of 1951. *Petras v. Union Township,* 28 D. & C. 2d 687 (1962), affirmed per curiam 409 Pa. 416, 187 A.2d 171 (1963). Officer Vicini is not a "regular full-time officer." He works part-time, one or two days a week and also maintains another full- time job. Most importantly, Officer Vicini is not

on call at any or all times, although he would respond in the case of an emergency.

In terms of determining legislative intent, it is appropriate to examine other statutes relating to municipal police officers. In the act mandating police training in Pennsylvania, a "police officer" is defined as "[a]ny full-time or part-time employee, of a city, borough, town, township or county police department assigned to criminal and/or traffic law enforcement duties. . . ." 53 P.S. §741. Reference may also be made to the body of laws setting forth the jurisdictional limits for municipal police departments. For example, a "municipal police officer" is defined as "any natural person who is properly employed by a municipality, including a home rule municipality, as a regular full time or part time police officer." 42 Pa. C.S. §8951.

We also must recognize the role of municipal ordinances relating to police departments, as we are bound to take judicial notice of municipal ordinances. 42 Pa. C.S. §6107(a). The Borough of Coudersport, in its codified ordinances, provides for the establishment of a police department "[c]onsisting of a chief, assistant chief, patrolmen or other classifications desired by council." (Code of Ordinances, Borough of Coudersport, Chapter I, subsection 321). There is no prohibition in the ordinance concerning the hiring of part-time officers.

Defendant argues that the Borough Code, section 46121, relating to the hiring of police officers, must be strictly construed pursuant to 1 Pa. C.S. §1928. We disagree. The strict construction requirement relates, inter alia, to penal statutes. *Id.* The borough code is not a penal statute by any definition and thus defendant's reliance on strict construction is misplaced. Other sections relating to the construction of statutes are relevant to our consideration. 1

Pa. C.S. §1928C provides that "all other (i.e., those not required to be strictly construed) provisions shall be *liberally* construed to effect their objects and promote justice." (emphasis supplied) In looking at legislative intent, certain presumptions may also be used, including "that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable." 1 Pa. C.S. §1922. These same rules apply to interpreting ordinances. *Appeal of Neshaning Auto Villa Ltd.*, 25 Pa. Commw. 129, 358 A.2d 433 (1976).

It is hard to conceive what would be more absurd or unreasonable than to determine, in the absence of a specific prohibition, and in view of the state of the record in this case, that the Borough of Coudersport cannot employ part-time police officers. The view defendant urges on the court is clearly contrary to the promotion of justice, and cannot be sustained.

In the *Russ* case, *supra,* relating to the Borough of East Stroudsburg Police Department, the civil service laws were definitely applicable. *Russ, supra,* at 2. The arresting officer in *Russ,* in fact, had failed to place in the top three positions on the civil service list on two separate occasions. The *Russ* case, therefore, is not applicable here on its facts or law.

In view of the foregoing, it is apparent that the Borough Code and other related laws discussed herein relating to municipal police officers do not forbid the hiring of part-time police officers, absent an attempt to circumvent the civil service laws. Nothing forbids such hiring, and in fact, part-time officers are specifically contemplated as noted herein. The Legislature obviously contemplated the hiring of part-time officers by boroughs, subject to the requirements of the civil service law when it applies by virtue of a department's size.

We agree that had Officer Vicini been an auxiliary police officer, in the absence of an emergency, he would have had no legal authority to arrest. Further, we agree that had Officer Vicini been a regular full-time officer, his appointment would have been in violation of the Police Civil Service Requirements. However, Officer Vicini is a part-time police officer, a category quantitively different than an auxiliary or full-time officer. As a part-time officer, we find Officer Vicini has not violated the Police Civil Service Act. We find nothing in either the record or law which in any manner prohibits his hiring as a part-time police officer for the Borough of Coudersport. Therefore, Policeman Vicini was legally hired and authorized to make an arrest. For this reason, defendant's motion to suppress is denied in accordance with the following

### ORDER

And now, May 11, 1988, defendant's omnibus pretrial motion and specifically, the motion to suppress, is hereby denied.